**F. Patrick NUGENT; Anita Nugent, Appellants,**

**v.**

**AMERICAN BROADCASTING SYS-TEMS, INC.; Betacom of Phoenix, Inc.; Beta Communications, Inc., Appellees.**

**No. 99–17444.**

**B.A.P. No. AZ–98–01704–PRyK.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 2000.

Decided Jan. 5, 2001.

Before SCHROEDER, Chief Judge, HALL, and W. FLETCHER, Circuit Judges.

## MEMORANDUM [1]

Patrick and Anita Nugent (the "Nugents") appeal from an order of the Bankruptcy Appellate Panel affirming an order of the bankruptcy court. The bankruptcy court found that the Debtors' confirmed plan of reorganization bars the constructive trust claim that the Nugents seek to press against the Debtors in a lawsuit filed in federal district court. We affirm.

## I.

We reject the Debtors' argument that three district court orders that were entered after the Nugents filed their notice of appeal render the Nugents' appeal moot.[2] The 1999 Summary Judgment Order does not render the appeal moot because the district court has not yet entered final judgment in the district court litiga-

---

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

2. The three district court orders include: (1) the May 21, 1999 Summary Judgment Order; (2) the August 5, 1999 Emergency Stay Order; and (3) the October 19, 1999 Mootness Order.

Because the orders may affect our jurisdiction, they have a direct relationship to the appeal, and we take judicial notice of them. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992); *Shaw v. Hahn,* 56 F.3d 1128, 1129 n. 1 (9th Cir.1995).

tion. *See League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1301 n. 1 (9th Cir.1997). Although the August 5, 1999 Emergency Stay Order and the October 19, 1999 Mootness Order resulted in a distribution of funds from the bankruptcy estate, the Nugents' constructive trust claim provides an alternate claim against the remaining funds. Because this court could fashion effective relief as to the remaining $2.9 million, the appeal is not moot. *See Spirtos v. Moreno (In re Spirtos),* 992 F.2d 1004, 1006 (9th Cir.1993).

## II.

The bankruptcy court found that under 11 U.S.C. § 1141, the Debtors' confirmed Plan of Reorganization (the "Plan") was final and binding on the Nugents, and that res judicata barred the Nugents' constructive trust claim. We agree. "Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect." *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995). A creditor who does not wish to be bound by the plan " 'should object to the confirmation of the plan.... The point is that only a direct attack is available and collateral attack is unavailable.'" *Id.* (quoting 5 Collier on Bankruptcy ¶ 1141.01[1] (Lawrence P. King, ed., 15th Ed.1995)).

The Nugents failed to challenge the Debtors' confirmed Plan of Reorganization on direct appeal. The Plan is now final and binding on the Debtors and all creditors, including the Nugents. *See* 11 U.S.C. § 1141(a); *Heritage Hotel Ltd. Partnership v. Valley Bank of Nev. (In re Heritage Hotel Partnership I),* 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd without opinion,* 59 F.3d 175 (9th Cir.1995). Although the Nugents' constructive trust claim properly could have been raised in the bankruptcy court, the Nugents failed

to raise it in that court. *See Mitsui Manufs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.),* 13 F.3d 321, 324 (9th Cir.1994) (constructive trust claim raised in bankruptcy court). The Nugents do not claim that the bankruptcy court was unable or unwilling to address their constructive trust claim.

The Plan specifically dealt with the proceeds of the sale of the radio stations, the same funds upon which the Nugents now seek to impose a constructive trust. The Plan provided that the proceeds would be placed in the Recovery Fund and distributed among the various creditors. The Plan specifically addresses the claims of the Nugents and makes no provision for a constructive trust claim over the entire sale proceeds. Although the Plan establishes a reserve fund for the Nugents and the other claimants with disputed claims, the Plan does not reserve the entire proceeds for the Nugents as a constructive trust claim would contemplate. What the Nugents are attempting to do with their constructive trust claim is carve out a larger share of the available assets than they would otherwise receive under the Plan. If the constructive trust were imposed, it would substantially impair the rights of other creditors. *See FDIC v. Alshuler (In re Imperial Corp.),* 92 F.3d 1503, 1506 (9th Cir.1996) (noting that "whether rights or interests established in the prior judgment would be destroyed or impaired" by prosecution of a later action is relevant in determining whether the same claims are involved for res judicata purposes). The Nugents did not challenge the Plan on direct appeal, and res judicata bars their collateral attack. *See Trulis,* 107 F.3d at 691.

The Nugents argue that their constructive trust claim is not an impermissible collateral attack on the confirmed Plan because under *Torres v. Eastlick (In re*

*North American Coin & Currency, Ltd.),* 767 F.2d 1573 (9th Cir.1985), their constructive trust claim "merely" seeks to determine what assets are in the bankruptcy estate. Their argument is unavailing. Under *In re North American Coin,* property that is subject to a constructive trust is not necessarily excluded from the bankruptcy estate. *See id.* at 1575. The case stands for the proposition that "while state law must be the starting point in determining whether a constructive trust may arise in a federal bankruptcy case, that law must be applied in a manner not inconsistent with federal bankruptcy law." *In re Unicom Computer,* 13 F.3d at 325 n. 6. Furthermore, *In re North American Coin* dealt with a pre-confirmation constructive trust claim; the case does not address whether the Debtors' confirmed Plan of Reorganization bars the Nugents' constructive trust claim *post-confirmation.*

The Nugents next argue that the confirmed Plan is not res judicata as to their constructive trust claim because their claim was actually pending pre-confirmation.[3] The Nugents argue that it is clear that their constructive trust claim was pending pre-confirmation in their Fourth Amended Complaint because the Debtors filed and won a motion for summary judgment on the constructive trust claim. However, the summary judgment order to which the Nugents refer is the 1999 Summary Judgment Order based on the *Fifth* Amended Complaint, which was filed *after* the Plan was confirmed, not before. Furthermore, as the bankruptcy court discussed, the parties' communications indicate that the Fourth Amended Complaint does not seek the imposition of a constructive trust on the assets of the bankruptcy estates.[4]

Finally, the Nugents contend that their constructive trust claim was contemplated by the bankruptcy court's 1995 Stay Modification Order allowing the Nugents' district court litigation to "proceed to final liquidation." We agree, however, with the bankruptcy court's conclusion that the automatic stay was modified only as to the claims that were actually pending in the district court litigation as of the date of the order modifying the stay. At the time of the Stay Modification Order, the Nugents' Third Amended Complaint was the operative complaint. The Third Amended Complaint sought only damages and an accounting of stock; it did not include a constructive trust claim. The Nugents fail to explain how the bankruptcy court could lift the automatic stay as to the constructive trust claim when, at the time of its order, the bankruptcy court had no idea

---

3. The Nugents argue that collateral estoppel bars the Debtors from arguing that the constructive trust claim was discharged or barred by the confirmation of the Plan. However, we find no indication that the Nugents raised their collateral estoppel argument before the bankruptcy court. We therefore find the argument waived. *See Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1321 (9th Cir. 1998).

4. The Nugents argue that the bankruptcy court incorrectly found that the Nugents agreed to withdraw the constructive trust claim that they purport to have raised in their Fourth Amended Complaint. The bankruptcy court did not find an agreement to withdraw

the constructive trust claim, but instead used the communications between counsel for the Debtors and counsel for the Nugents to shed light on whether a constructive trust claim over the proceeds of the sale of the radio stations was asserted in the Fourth Amended Complaint. Thus the bankruptcy court also did not err by failing to conduct an evidentiary hearing regarding an agreement to withdraw the constructive trust claim. Indeed, the bankruptcy court's September 23, 1998 order denying the Nugents' motion for a new trial specifically notes that the Nugents had the opportunity to present evidence at the July 6, 1998 hearing.

that the claim existed.[5]

For the foregoing reasons, the order of the Bankruptcy Appellate Panel affirming the order of the bankruptcy court is AFFIRMED.

---

**5.** The Nugents argue that even if their constructive trust claim was "not present at the time the stay was modified, the Fourth Amended Complaint unquestionably relates back to the Third Amended Complaint" under Federal Rule of Civil Procedure 15(c), and the constructive trust claim therefore is included within the Stay Modification Order. The Nugents' constructive trust claim may very well relate back to an earlier complaint for statute of limitations purposes. However, the Nugents fail to provide any authority in support

of their argument that it also relates back for purposes of relief from an automatic stay.

